UNITED STATE DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA



FILED BY _____ D.C.

NOV 22 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**FRANTZ GERMAIN**

Plaintiff

VS.

**U.S LOGISTICS, INC/JOHN COLFER, CARRIER411 SERVICES INC**
Defendants

### COMPLAINT FOR FALSE ACCUSATION AND DAMAGES

Comes now I, Frantz Germain the (plaintiff), files this Complaint against defendants, **U.S LOGISTICS INC** and its Executives **JOHN COLFER/BILL MOONEY** and **CARRIER411 SERVICES INC** seeking **$25,000,000.00** for unrepairable damages (I) the plaintiff suffered by the defendants Malicious, Reckless actions, acts of evil, Wickedness, intended to mislead, Deceitful, False Accusations, generally intended to hurt others and causes permanent damages 28 U.S. Code § 4101, Birdsall v. Coolidge, 93 U.S. 64 (1876). The defendant intentionally transforming the company, I build with everything I had into dust with false accusations posted on **freight guard carrier 411**, the defendants accused us of fraudulent activities, imputed wrongdoing, dishonesty and lack of integrity into the transportation industry, advised other brokers that we're not trusty worthy for carrier loads opportunity by stating that **DON'T USE THIS CARRIER-BAD NEWS.**

### FACTS

July 22nd, 2022, **S&L Trucking Express Inc** MC-1174482 agreed with **U.S LOGISTICS INC** to transport load# 290161 coming from **T trading, Inc** 1370 Honeyspot Rd Stratford CT 06615 to deliver 07/25/2022 at **SG Ammo LLC** 8215 S Perkins Road Stillwater OK 74074, the

load was booked by Veronica Dale a representative for **TRANSPORT CULTURE MANAGEMENT** a dispatching agency we contracted for load booking service, DUKENS PAULEMON DL# P455-160-82-050-0 was the assigned driver for this load. July 23rd around late morning the driver was involved into accident the state trooper called **MAGILLS TOWING & RECOVERY** to cleared out the road, the driver was injured he was transported to the nearby medical center for treatments. Veronica contacted **US LOGISTICS** informed them of the accident, I contacted my insurance agency **TRI COUNTY INDEPENDENT INSURANCE AGENCY LLC 22644, BECKENHAM CT, NOVI, MI 48374P-248-621-9233**. Claim Adjuster Peter Lalande Phone 458.803.6338 was assigned to handle the claim case number 266074896-0001-03 was provided. The claim adjuster was told the state of **Pennsylvania commonwealth** requires an investigation for every commercial accident involving **FMCSA**, the State will assign an officer to complete the investigation, before Covid-19 the service-Aid department was in charge to handle this type of situation that had recently changed post Covid-19 the wait its longer now than it was before they're backed up with work. Veronica informed **U.S LOGISTICS INC** of the process. On August 17th, 2022, **BILL MOONEY** one of the executives for U.S LOGISTICS INC filed a false report my company accused my company of fraudulent activities, double brokerage, uninsured carrier, unresolved claims issues and illegally brokered this freight to someone name Duckens. Finally, he did make sure for us to be out of business quote: DON'T USE THIS CARRIER-BAD NEWS. The driver Ducken Pauleman has been a company driver since December 2021 and the very first, he carried was for **TRINITY LOGISTICS Load# 6857126** on December 12/03/2021. Beginning on August 19th and continuing through the present, my company **S&L TRUCKING EXPRESS MC-1174482** been dropped by every major broker. The defendant claimed was without merit There are no reasonable or factual grounds to support the underlying claim there was no truth to it. The defendant intended was pure evil caused unnecessary harmed express purposes of injuring my company intentionally and unlawfully interfering with my business and made sure we don't find work with other brokers by defaming the company. In further of the conspiracy and preconceived plan, the Defendant engaged in a joint scheme with the platform of **CARRIER411 SERVICE INC**. Evidenced by their concerted action on the Defendants acted with the express and malicious intent to cause

permanent injury. The Defendants 'actions constitute a conspiracy at common law as a direct result, suffered actual damages, including, but not limited to insult, pain, embarrassment, loss drivers, financial loss, equipment such as trucks and trailers has been repo for non-payments, please see below the Defendant's irrational report and false accusation. From the very beginning the defendant was harassing the staff by both verbally and text message, I told him this type of behavior will not be tolerated its unnecessary as the defendant continued the exotic behavior, we no longer entertained him by hung up the phone I texted him the conversation will conduct via email please the exhibit.

## MC1174482 FREIGHTGUARD REPORT

**U.S. LOGISTICS, INC.** reported its experience with your company and may make its report available to other transportation intermediaries, depending on your response. If you do not act within 72 hours, the report will indicate your failure to respond and will be released automatically.

**REPORTED COMPANY:**

S&L TRUCKING EXPRESS INC

COCONUT CREEK, FL 33073

MC1174482

## THE FOLLOWING ITEMS WERE REPORTED:

UNAUTHORIZED RE-BROKERING OF SHIPMENT

UNRESOLVED CLAIM ISSUES

FRAUDULENT ACTIVITY

**ADDITIONAL COMMENTS:**

CARRIER WAS INVOLVED IN A ROLL OVER ACCIDENT IN ARONA PA 7.23.22. FREIGHT WAS NOT DAMAGED & ENDED UP AT TOW YARD. S&L APPARENTLY

ILLEGALLY BROKERED THIS FREIGHT TO SOMEONE NAMED DUCKENS. S&L STOPPED TAKING OUR PHONE CALLS. THE INSURANCE AGENT-TRICOUNTY NOVA MI BELEIVES THEY ARE NOT COVERED & THEY WILL NOT GIVE US THE CLAIM # NOR THE NUMBER FOR ACCELERANT SPECIALTY INS. FREIGHT IS STILL SITTING IN A WRECKER'S YARD @ $600 PER DAY STORAGE AND THESE PEOPLE DO NOT CARE. DON'T USE THIS CARRIER-BAD NEWS

1ST He claimed the load was illegally brokered to someone named duckens. The driver Dukens Paumon was hired on 11/15/2021 he caried his first on 12/03/2021 TRINITY LOGISTICS from Gladston VA to Marlborough MA, an additional to Trinity Logistics I added three additional brokers Elite Transit, Ryan Transport and ATS just for verification.

2nd He claimed the insurance agent tri county believed we're not covered, the policy paid off since the month of May until May 2023.

3rd He claimed there was no claimed we will give him the claim number and he was copied on the email, and I personally copied him on the messages with the claim adjuster.

4TH He claimed the load was sitting in a wrecker's yard @ $600 per day storage and these people don't care. Totally false he was aware of the process, there's rules and regulation we couldn't do anything until the claim adjuster clear us out unfortunately the state of Pennsylvania Commonwealth has restricted rules just like any other state.

## CARRIER411 SERVICES INC

**Carrier 411 Services Inc** also responsible for the damages because **U.S LOGISTICS** used its Platform to published false allegation without verification. This type of service should consider **Rule 4.1: Truthfulness in Statements to Others**, Carrier411 should have performed their due diligence to making sure their client is telling the truth.

CARRIER411 SERVICES INC policy is 72 hours to respond if don't respond in that time period the investment will be dust, it took me years to build this company and destroyed in 72 hours not working for me. That's irresponsible activity by CARRIER411 SERVICES INC to

think that everyone will be available to respond to email or phone calls in 72 hours. In October 2020 my 6-year-old daughter was diagnostic with (Brain Stem Glioma) a rare form aggressive of brain cancer, the doctor told me 8 months will be the max, Adelle love life she held on put up a fight for 2 years eventually defeated passed away October 18th, 2022, my family and I been through hell as if this not enough and now my business is completely gone because of false allegation posted on carrier411 platform that aren't true. Overlooks a statute of the company your client posted not a good a way of doing business the legal aspect of everything should not overlook, even if your client paying top dollars, CARRIER411 only focus on its interest that's unreasonable way of doing business without using the rules of perjury Rules 1.1 I made several attempted to **CARRIER411 SERVICES INC** I wanted to provide them the ultimate the representative hung up the phone one me I had no choice but to file this lawsuit against this platform. CARRIER411 SERVICES INC should understand it does take 72 hours to build an establishment business something as serious as this is RULES of evidence should in place with your clients, your clients not being honest, and you posted on your platform without the evidence to support your client's claimed CARRIER411 SERVICES INC did more damages because the platform publishing lies to destroy other businesses without the facts and that's wrong.

## Rule 103. Rulings on Evidence Primary tabs

**Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: **(1)** if the ruling admits evidence, a party, on the record: **(A)** timely objects or moves to strike; and **(B)** states the specific ground, unless it was apparent from the context; or **(2)** if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context. **(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules

definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal. **(c) Court's Statement About the Ruling. Directing an Offer of Proof.** The court may make any statement about the character or form of the evidence, the objection made, and the ruling. The court may direct that an offer of proof be made in question-and-answer form. **(d) Preventing the Jury from Hearing Inadmissible Evidence.** To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means. **(e) Taking Notice of Plain Error.** A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.

we no longer on the **load board** for Landstar, JB Hunt, XPO, Ryan Transport, Redwood Logistics, AP Freight Inc, Cowan Logistics, Fairmont Logistics, Echo Global Logistics, Nav Logistics Inc, Liberty Commercial LLC, Arrive Logistics, AMX Logistics, USA Truck Inc, Molo Solution LLC, Trinity Logistics, Sage Freight LLC, Prime Logistics Solution, Allover Freight Inc, Moon Trucking LLC, Allen Lund, R2 Logistics Inc, Shine Logistics LLC, SunTeck Transport Co, Eps Logistics Services Inc, Expedite Logistics, GLT Logistics, Venture Connect LLC, Bluegrace Logistics, KCH Logistics, Gravity Logistics, Becker Logistics, Daim Inc, Axle Logistic, Spot Logistics, Best Bay Logistics, AMSTAR, Eternity Solution LLC, Frontline Logistics, BFS Logistics, Steam Logistics, Summit Eleven Inc, King Of Freight.

ST. AMANT v. THOMPSON

. CERTIORARI TO THE SUPREME COURT OF LOUISIANA.

No. 517. Argued April 4, 1968.-Decided April 29, 1968. Petitioner made a televised political speech in the course of which he read questions which he had put to a union member, Albin, and Albin's answers; the answers falsely charged respondent, a public official, with criminal conduct. Respondent sued petitioner for defamation and was awarded damages by the trial judge. The trial judge, having considered New York Times Co. v. Sullivan, 376 U. S. 254 (1964), decided after the trial, denied a motion for a new trial. An intermediate appellate court reversed the trial court's judgment, having found that petitioner had not acted with actual malice within the meaning of the New York Times rule, i. e., with knowledge that petitioner's

statements were false or with reckless disregard of whether they were false or not. The State Supreme Court reversed, finding that there had been sufficient evidence that petitioner had acted in "reckless disregard" in that petitioner had no personal knowledge of respondent's activities; relied solely on Albin's affidavit though there was no evidence as to Albin's veracity; failed to verify the information with others who might know the facts; did not consider whether the statements were defamatory; and mistakenly believed that he had no responsibility for the broadcast because he was merely quoting Albin. Held: In order that it can be found that a defendant, within the meaning of New York Times, acted in "reckless disregard" of whether a defamatory statement which he made about a public official is false or not, there must be sufficient evidence to permit the conclusion that the defendant had serious doubts as to the truth of his publication. Pp. 730-733. (a) In a defamation action by a public official reckless conduct is not measured by whether a reasonably prudent man would have published the statement or would have investigated before publishing. P. 731. (b) The people's stake in the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would adequately implement First Amendment policies. Pp. 731-732. (c) A defendant's testimony that he acted in good faith is not conclusive as to that issue, since the fact finder in the light of all

OCTOBER TERM, 1967

Opinion of the Court. 390 U. S. the surrounding circumstances must determine whether the publication was indeed made in good faith. P. 732. (d) The evidence in this case is not sufficient to permit the conclusion that petitioner acted in reckless disregard of whether the statements about respondent were false or not. Pp. 732-733. 250 La. 405, 196 So. 2d 255, reversed and remanded. Russell J. Schonekas argued the cause and filed a brief for petitioner. Robert L. Kleinpeter argued the cause and filed a brief for respondent. MR. JUSTICE WHITE delivered the opinion of the Court. The question presented by this case is whether the Louisiana Supreme Court, in sustaining a judgment for damages in a public official's defamation action, correctly interpreted and applied the rule of New York Times Co. v. Sullivan, 376 U. S. 254 (1964), that the plaintiff in such an action must prove that the defamatory publication "was made with 'actual malice'-that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U. S., at 279-280. On June 27, 1962, petitioner St. Amant, a candidate for public office, made a televised speech in Baton Rouge, Louisiana. In the course of this speech, St. Amant read a series of questions which he had put to J. D. Albin, a member of a Teamsters Union local, and Albin's answers to those questions. The exchange concerned the allegedly nefarious activities of E. G. Partin, the president of the local, and the alleged relationship between Partin and St. Amant's political opponent. One of Albin's answers concerned his efforts to prevent Partin from secreting union records; in this answer Albin referred to Herman A. Thompson, an East Baton Rouge Parish deputy sheriff and respondent here: "Now, we knew that this safe was going to be moved that night, but imagine our predicament, knowing

Opinion of the Court. of Ed's connections with the Sheriff's office through Herman Thompson, who made recent visits to the Hall to see Ed. We also knew of money that had passed hands between Ed and Herman Thompson . . . from Ed to Herman. We also knew of his connections with State Trooper Lieutenant Joe Green. We knew we couldn't get any help from there and we didn't know how far that he was involved in the Sheriff's office or the State Police office through that, and it was out of the jurisdiction of the City Police.'" Thompson promptly brought suit for defamation, claiming that the publication had "impute[d] . . . gross misconduct" and "infer[red] conduct of the most nefarious nature." The case was tried prior to the decision in New York Times Co. v. Sullivan, supra. The trial judge ruled in Thompson's favor and awarded $5,000 in damages. Thereafter, in the course of entertaining and denying a motion for a new trial, the Court

considered the ruling in New York Times, finding that rule no barrier to the judgment already entered. The Louisiana Court of Appeal reversed because the record failed to show that St. Amant had acted with actual malice, as required by New York Times. 184 So. 2d 314 (1966). The Supreme Court of Louisiana reversed the intermediate appellate court. 250 La. 405, 196 So. 2d 255 (1967). In its view, there was sufficient evidence that St. Amant recklessly disregarded whether the statements about Thompson were true or false. We granted a writ of certiorari. 389 U. S. 1033 (1968). 1 St. Amant had preceded this question and answer with other answers by Albin asserting that Partin, on learning that a union member had written to the Secretary of Labor charging that Partin had been stealing union funds, had become "pretty riled up" and had decided to "get rid of the safe" containing the union records.

Opinion of the Court. 390 U. S. people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones. We adhere to this view and to the line which our cases have drawn between false communications which are protected and those which are not. The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.' By no proper test of reckless disregard was St. Amant's broadcast a reckless publication about a public officer. Nothing referred to by the Louisiana courts indicates an awareness by St. Amant of the probable falsity of Albin's 3 See, e. g., Curtis Publishing Co. v. Butts, 388 U. S. 130, 169-170 (WARREN, C. J., concurring in the result),

## COUNT I DEFAMATION-LIBEL

The preceding paragraphs are hereby incorporated by reference as if set forth herein.

The Defendant made a false and malicious statement intended to injure the reputation of the company

Permanently. The Defendant made a false and malicious statement when he stated that **DON'T USE**

**THIS CARRIER-BAD NEWS)** We're currently suffering of financial and emotional distress

no freight broker willing to use MC-1174482 because of the defendant hateful comment and lies.

## COUNT 2 PUNITIVE DAMAGES

The preceding paragraphs are hereby incorporated by reference as if set forth herein. Defendant's conducts showed malice, fraud, selfish behavior, and entirely he'd preferred we disobeyed the state of

Pennsylvania law just to please him and of course The U.S CONSTITUTION clauses that's says no one is Above the Law Including **Joseph Robinette Biden Jr 46th President of the United States.**

## COUNT 3 INJUNCTION

The preceding paragraphs are hereby incorporated by reference as if set forth herein.
Seeking order Carrier411 Services Inc to remove the false defamatory statement it made on its platform immediately. Both defendants U.S Logistics INC and Carrier411 Services Inc have till November 15th, 2022, to settle outside to prevent trial.

## Rule 38. Right to a Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands jury trial in this action of all issues so triable.

### U.S LOGISTICS DESCRIPTION

US Logistics Inc is a company that operates in the Transportation/Trucking/Railroad industry. It employs 101-250 people and has $50M-$100M of revenue. The company is headquartered in Location 350 Benigno Blvd, Bellmawr, New Jersey, 08031. Leadership John Colfer President, Bill Mooney vice President, Susan Brunner billing manager, William Mulholland regional driver manager, Marla Luciano Manager LTL pricing, Terry Harris and Paul Feliceangeli operations managers.

## JURISDICTION AND VENUE

The United States District Court for the Southern District of Florida has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b). Venue is proper has subject in this district under 28 U.S.C. § 1391(b), (c), and (d), and 15 U.S.C. § 53(b) has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 and § 1367 and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest.

## PRAYER FOR RELIEF

WHEREFORE, I the (Plaintiff) demands the following:
Seeking **$25,000,000.00** judgment against the Defendants **U.S LOGISTICS INC** and its Executives **JOHN COLFER/BILL MOONEY** and **CARRIER411 SERVICES INC** for the damages suffered to **"S&L TRUCKING EXPRESS INC MC-1174482"** for destroyed my company relationships and reputations with other brokers. WHEREFORE, I the (Plaintiff)

demands the following: Seeking **$25,000,000.00** judgment against the Defendants **U.S LOGISTICS INC** and its Executives **JOHN COLFER/BILL MOONEY** for the damages suffered to **"S&L TRUCKING EXPRESS INC MC-1174482"** for destroyed my company relationships and reputations with other brokers in particularly. Defendant words put us out of business permanently, we've been dropped by every single credential broker, currently we can't find work. The defendant intentional infliction by stated that (**DON'T USE THIS CARRIER-BAD NEWS**) We're currently suffering of financial and emotional distress (IIED) occurs when one acts abominably or outrageously with intent to cause another to suffer severe emotional distress, such as issuing the threat of future harm.

Date 11/02/2022

4140 NW 62nd ct

Coconut Creek, FL 33073

954-803-6816

Frantz701@yahoo.com

Respectfully Submitted

Frantz Germain

| | |
|---|---|
| **EXHIBIT -A** | Load #290161 U.S Logistics Inc |
| **EXHIBIT -B** | Driver Information includes previous carried Load in 2021 |
| **EXHIBIT -C** | The Broker irrational and offensive text messages |
| **EXHIBIT -D** | Magills Accident Report, Email and texts communication for claim |
| **EXHIBIT -E** | Insurance Coverage & Transport Culture Management Dispatch |
| **EXHIBIT -F** | The Defendant Irrational false claimed Report |
| **EXHIBIT -G** | My Daughter Adelle Illness |